Cupp, J.,
dissenting.
{¶ 33} Our role with regard to statutory interpretation is to apply clear and unambiguous statutes as written and to engage in no further interpretation. *257 State ex rel. Burrows v. Indus. Comm. (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519. It is our duty to enforce a statute as written and to not add or subtract language from the statute. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 366, 18 OBR 419, 481 N.E.2d 613. And I agree with Chief Justice Brown’s analysis regarding the plain and unambiguous requirements of the statutes applicable to this matter.
{¶ 34} In this case, appellant registered on the Putative Father Registry. However, appellant failed to have determined by a court or administrative proceeding prior to the date the adoption petition was filed that he had a parent-child relationship with the child. R.C. 3107.06(B), 3107.01(H), and 3107.07(B)(1). The adoption statutes require that the statuses of the parties in an adoption proceeding involved be ascertained at the time the adoption petition is filed. Consequently, R.C. 3107.07(A), which sets out when a parent’s consent to adoption is not required, is not applicable here, because appellant’s status at the time the adoption petition was filed was as a putative father. This result may seem harsh. Nevertheless, appellant is a “putative father” as that term is defined in R.C. 3107.01(H), and his consent is necessary, R.C. 3107.06(C), unless one of the R.C. 3107.07(B)(2) exceptions applies to negate his right to consent.
{¶ 35} I also agree with Justice Lanzinger’s conclusion that the holding in In re Pushcar, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, should be applied herein. The Pushcar syllabus plainly states that “[w]hen an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child.” Id. Clearly, the stay required by Pushcar applies to this case.
{¶ 36} The majority’s application of Pushcar to this case, however, takes the Pushcar holding too far by permitting a party’s consent-to-adoption status to change even after the adoption petition has been filed, in clear contradiction of the language of the statute. Expanding Pushcar in this way amounts essentially to judicially waiving the requirement that any determination that a man is the natural father — for purposes of the adoption proceeding — be made prior to the time the adoption petition is filed with the probate court. R.C. 3107.01(H). This extension of Pushcar is contrary to both the General Assembly’s clear statutory directive and to the public policy that it has clearly expressed in the adoption statutes. That the biological-parent determination must be made before an adoption petition is filed in order to legally fix the necessity of obtaining that person’s consent to the adoption is a mandatory statutory requirement (which the majority seems intent on judicially writing out of the statute). The majority’s decision today serves only to undermine the effectiveness of the provisions pertaining to putative fathers and to upend Ohio’s orderly adoption process.
*258 {¶ 37} Ohio’s adoption laws were amended in 1996 to streamline the adoption process. Am.Sub.H.B. No. 419, 146 Ohio Laws, Part III, 4660. This statutory-enactment had among its primary objectives the establishment of statewide standards for adopting a child and the reduction of the time necessary to finalize an adoption from what was often four years before the statutory change, to between nine and 24 months under the current framework. 64 Ohio Report No. 215, Gongwer News Service, Inc. (Nov. 9, 1995) 6. Another objective of the legislation was to prevent children from being forcibly removed from their adoptive families after a biological father belatedly exercised parental rights. 64 Ohio Report No. 198, Gongwer News Service, Inc. (Oct. 17, 1995) 1.
{¶ 38} To achieve these goals while also upholding the rights of the natural parents, the child, and the adoptive parents, the General Assembly created the Putative Father Registry and other options for putative fathers to maintain consent-to-adoption rights. Legislative Service Commission Final Bill Analysis, Am.Sub.H.B. No. 419, 121st General Assembly; 65 Ohio Report No. 56, Gongwer News Service, Inc. (Mar. 21, 1996) 6; In re Adoption of Zschach (1996), 75 Ohio St.3d 648, 651-652, 665 N.E.2d 1070. After holding open hearings, inviting input from the public and adoption advocates, and reviewing adoption policy, the General Assembly enacted statutes requiring putative fathers to promptly demonstrate their commitment to meeting the responsibilities of parenthood. R.C. 3107.061, 3107.062 and 3107.07(B)(1); Zsehach, 75 Ohio St.3d at 651-652, 665 N.E.2d 1070. The United States Supreme Court has also sanctioned the use of putative-father registries as mechanisms to facilitate the adoption process. Lehr v. Robertson (1983), 463 U.S. 248, 263-264, 266-268, 103 S.Ct. 2985, 77 L.Ed.2d 614.
{¶ 39} As this court has previously observed, the “goal of the adoption statutes is to protect the best interests of children. In cases where adoption is necessary, this is best accomplished by providing the child with a permanent and stable home, and ensuring that the adoption process is completed in an expeditious manner.” (Citation omitted.) Zschach at 651, 665 N.E.2d 1070. The express legislative direction contained within the adoption statutes that requires the status of the biological father to be determined at the time the adoption petition is filed is one that the legislature has determined advances this goal.
{¶ 40} In contrast, the majority’s application of In re Pushcar to the case now before us is in direct contravention of the clearly expressed requirements of the statute. Without the benefit of the input available to the legislature on the benefits or detriments of any aspect of adoption policy, the majority of this court nullifies the express and specific language of the statutes and overrides the legislature’s articulated policy decisions, substituting its own. The 1996 revisions to the adoption statutes were designed to provide more predictability and *259 certainty in the adoption process, with due regard to the rights of the biological parents, and are consistent with the goal of expeditiously moving children through the adoption process into permanent and stable homes. The court’s decision today is inconsistent with those objectives and calls into question the viability of any adoption currently in process. In the end, the result of the majority opinion is to excuse appellant’s failure to demonstrate his commitment to meeting the responsibilities of parenthood in the manner provided by the applicable statutes, and leaves the child in legal limbo.
Voorhees & Levy, L.L.C., and Michael R. Voorhees, for appellants, Jason and Christy Vaughn.
McQuades Co., L.P.A., and Alan J. Lehenbauer, for appellee, Benjamin Wy-rembek.
Susan Garner Eisenman and Mary Beck, urging reversal for amicus curiae, American Academy of Adoption Attorneys.
{¶ 41} In this case, appellant registered with the Putative Father Registry. However, appellant failed to establish before the adoption petition was filed that he had a parent-child relationship with the child. The decision by the majority, which permits appellant’s status to change based on the outcome of the juvenile court proceedings, is not authorized by the adoption statutes and is inappropriate in light of the clear directive of those statutes. Because appellant was legally a “putative father” and not a “father” at the time the adoption petition was filed, the probate court should have determined appellant’s status with respect to whether his consent was necessary under R.C. 3107.07(B)(2). Failing to do so was error.
{¶ 42} I must respectfully dissent from this court’s holding.